STATE OF NORTH CAROLINA v. RONALD ROGERS

No. 176A98

(Filed 16 June 2000)

**Constitutional Law— effective assistance of counsel—time for preparation**

Defendant is entitled to a new trial because the trial court violated his rights to effective assistance of counsel when it denied defendant's repeated motions for a continuance under N.C.G.S. § 15A-952(g) in his capital trial since it is unreasonable to expect that any attorney could be adequately prepared in thirty-four days to conduct a bifurcated capital trial for this complex case involving incidents in multiple locations over a two-day period with numerous witnesses.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Beale, J., on 8 December 1997 in Superior Court, Richmond County, upon a jury verdict finding defendant guilty of first-degree murder. On 1 November 1999, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 18 May 2000.

*Michael F. Easley, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, and Robert Montgomery, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance E. Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WAINWRIGHT, Justice.

On 20 February 1996, Ronald Rogers (defendant) was indicted for first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. In addition, on 18 March 1996, he was indicted for discharging a firearm into occupied property. Defendant was tried capitally before a jury at the 3 November 1997 Criminal Session of Superior Court, Richmond County. The jury found defendant guilty of first-degree murder on the basis of malice, premeditation, and deliberation; under the felony murder rule; and on the basis of lying in wait. Defendant was also found guilty of assault with a

deadly weapon with intent to kill inflicting serious injury and discharging a firearm into occupied property. After a capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder conviction. On 8 December 1997, the trial court sentenced defendant in accordance with the jury's recommendation. In addition, the trial court imposed consecutive sentences of 108 to 139 months' imprisonment for the assault conviction and 36 to 53 months' imprisonment for the discharging a firearm into occupied property conviction.

The State's evidence tended to show, *inter alia*, that on the night of 16 June 1995, a group of people from Richmond County, including Ralph Crump (Crump) and Saifullah Muhammad (Saifullah), went to a drag strip outside of Rockingham to watch some races. A group from Scotland County, including defendant, his brother Eddie "Mookie" Rogers (Mookie), Greg Morrison (Morrison), and Michael Goodwin (Goodwin), was also at the drag strip. An argument began between Morrison and some girls from Richmond County, and a physical altercation resulted, involving Morrison, Crump, Mookie, and Saifullah.

The next evening, a number of persons involved in the previous evening's altercation were at the Universal Lounge near Bennettsville, South Carolina. Defendant, Mookie, Crump, Goodwin, and Morrison were at the club along with Pete Hale (Hale), Victor McCallum (McCallum), and Eddie Keith (Keith). Ricky Thomas (Ricky), the decedent in this case, and his friend Danny Hayes (Hayes) also went to the club that night. There, they met Ricky's cousin, Mike Thomas (Mike), and the three went into the club.

At some point during the evening, a fight broke out in which Mookie was severely beaten. Defendant jumped into the crowd to help his brother. After Mookie got up, the crowd scattered, and people began yelling that someone had a gun. Crump was seen waving a silver handgun. Everyone began running outside. Several witnesses testified that defendant appeared upset because his brother had been hurt and that they saw him outside shooting his handgun into the air. As Ricky and Hayes left the club in Ricky's car, defendant and Mookie approached the car, and either defendant or Mookie pointed a gun at the occupants. Neither Hayes nor Ricky had been involved in the fight.

Saifullah had just arrived at the club when the fight broke out. Saifullah's father, Abdul Muhammad (Abdul), had come along but

stayed outside in Saifullah's Ford Bronco. Saifullah left when he saw the crowd start to run, and he and his father drove toward Hamlet, North Carolina. Saifullah had heard that Crump may have been involved in the fight and wanted to see if he was all right, so he drove to the Tall Pines Apartments in Hamlet where Crump lived. He parked his Bronco in front of the apartment complex office and got out to talk to some people who were in the parking lot. Abdul remained in the Bronco. Saifullah testified that he had several guns in his Bronco, including a .38-caliber handgun and a .45-caliber handgun, but stated that he did not fire them that night.

Ricky and Hayes drove to Hayes' mother's home in Hamlet. Ricky and Hayes then left Hayes' mother's home and drove to Tall Pines Apartments so Ricky could find out why someone had pointed a gun at him. At the apartments, Ricky parked his car beside Saifullah's Bronco and got out to talk with some people there about what had happened at the club. Ricky did not have a weapon.

Defendant, Keith, Hale, and McCallum got into McCallum's car at the club and drove toward Hamlet. Goodwin; Goodwin's wife, Angela; and Morrison followed in a second car. Defendant wanted to go to Hamlet to find out why there had been a fight. Several persons attempted to persuade defendant to go back and check on his brother, who had been taken to the hospital, but defendant refused. The two cars drove by the Tall Pines Apartments in Hamlet and stopped just past the entrance. The occupants of the vehicles got out of the cars and talked by the side of the road. Defendant, Morrison, and McCallum had guns. They walked over a hill toward the apartments. Approximately five minutes later, the other occupants of the vehicles heard gunshots coming from the direction of the apartments. Defendant, Morrison, and McCallum ran back to the cars, and they all left.

Both Hayes and Saifullah heard gunshots coming from behind them as they stood near the office of the Tall Pines Apartments. Both ran away from the gunfire, and neither saw who was shooting.

Officer Mark Terry of the Hamlet Police Department arrived at the apartment complex at around 4:10 a.m. He discovered Ricky lying on his back in the driver's side floorboard of the Bronco. He had suffered a gunshot wound to the back and later died. Abdul was discovered lying on the ground beside the passenger side of the Bronco. He had been shot at least eight and possibly nine times, but survived. Law enforcement officers recovered from the Bronco two weapons

matching the descriptions given by Saifullah and found a Jennings/Bryco 9-mm handgun on the ground near the apartment office. They later recovered a High Point 9-mm handgun from Morrison's residence. Officers found numerous shell casings and bullets on the ground in the area of the shooting and recovered several bullets from the Bronco.

Defendant assigns error to the trial court's denial of his repeated motions for a continuance. He argues the denial of his requests for a continuance resulted in a violation of his constitutional rights to effective assistance of counsel, to confront his accusers, and to due process of law. For the reasons stated below, we find merit in defendant's assignment of error and grant him a new trial.

In the instant case, defendant made his first appearance in court on 7 July 1995. At that time, the trial court appointed Tommy Nichols to represent him. A short time later, defendant retained the services of Eddie Meacham as defense counsel. A probable cause hearing was held on 14 September 1995, and the trial court determined that probable cause existed. Subsequently, indictments were handed down against defendant on 20 February 1996 and 18 March 1996. A Rule 24 hearing was conducted on 18 March 1996 at which the State indicated there was evidence of aggravating circumstances. Defendant was later arraigned and pled not guilty. Throughout these events, defendant was represented by Meacham.

Meacham filed a number of pretrial motions on defendant's behalf on 27 June 1997. These motions were heard on 2 July 1997. However, none of the corresponding orders arising out of these motions were ever prepared for entry. Two weeks later, on 16 July 1997, Meacham made a motion to be allowed to withdraw from the case. Meacham argued that he had not been paid a sufficient fee to proceed with a capital case. At the hearing on Meacham's motion to withdraw, defendant said he would attempt to obtain more funds for Meacham, but he expected Meacham to work on his behalf in the meantime. Defendant indicated that he did not believe Meacham had been performing any work up to that point and that Meacham had been pushing him to take a plea bargain, which he did not want to accept. The trial court denied Meacham's motion.

The trial, which was originally scheduled to begin on 18 August 1997, was postponed to 25 September 1997 because the trial judge was involved in another trial. Subsequently, on 18 September 1997, defendant moved to dismiss Meacham, arguing that conflicts of inter-

est existed for Meacham and that Meacham had not been properly preparing for trial. Judge Michael Beale allowed defendant to dismiss Meacham and to retain new counsel. On 22 September 1997, another hearing regarding defendant's counsel was held before Judge Howard Manning. Judge Manning allowed defendant an additional week to retain counsel, but defendant was unsuccessful. A week later, on 29 September 1997, a second hearing was held before Judge Manning, who appointed Ira Pittman as lead counsel. The following day, Judge Manning appointed Joseph Davis, III, as co-counsel. Defendant's trial was rescheduled to begin during the 3 November 1997 term of court, only thirty-four days later.

Defendant's new counsel met with Meacham and obtained his case file. The file showed that Meacham had not interviewed any of the many witnesses involved. Defense counsel then requested funds from the trial court to hire a private investigator to assist in interviewing witnesses. The motion was allowed on 13 October 1997.

On 22 October 1997, just twenty-three days after being appointed, defense counsel gave immediate notice that they were in need of a continuance by filing a motion to that effect. At the motion hearing on 24 October 1997, defense counsel argued strenuously that they had not had enough time to prepare the case and would not be able to proceed on 3 November as scheduled. The private investigator hired by defendant just the week before had not had time to report any results at the time of the hearing. Further, Pittman had not previously acted as lead counsel in a capital case, and Davis had never participated in a capital case. Defendant's counsel also noted that they were being required to prepare, in effect, for two trials: the guilt/innocence phase and, if necessary, a capital sentencing proceeding. Defendant's counsel also argued that a previous motion for a jury questionnaire had been allowed by the court and that they had not been able to prepare one that could be returned by prospective jurors prior to the commencement of the term of court.

In addition to the motion for a continuance, defendant's counsel filed a motion to withdraw from the case, citing Rule 6(a) of the Rules of Professional Conduct as prohibiting them from undertaking a case for which there was no possibility for them to be fully prepared. Judge Beale denied both motions. On 29 October 1997, defendant's counsel again renewed their motion for a continuance. At a motions hearing on 3 November 1997, Judge Beale denied the motion. Defendant's counsel then renewed their motion to be allowed to

withdraw from the case, and the trial court denied that motion. The case then proceeded to trial.

In determining whether to grant a continuance, the trial court should consider, *inter alia*, the following factors:

(1)  Whether the failure to grant a continuance would be likely to result in a miscarriage of justice;

(2)  Whether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that more time is needed for adequate preparation.

N.C.G.S. § 15A-952(g) (1999). In most circumstances, a motion to continue is addressed to the sound discretion of the trial court, and absent a manifest abuse of that discretion, the trial court's ruling is not reviewable. *See State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, 517 U.S. 1197, 143 L. Ed. 2d 794 (1996). However, when a motion to continue raises a constitutional issue, as in the instant case, the trial court's ruling is "fully reviewable by an examination of the particular circumstances of each case." *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). Generally, the denial of a motion to continue, whether a constitutional issue is raised or not, is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error. *See State v. Branch*, 306 N.C. 101, 291 S.E.2d 653 (1982).

The rights to effective assistance of counsel, to confrontation of accusers and witnesses, and to due process of law are guaranteed in the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and Sections 19 and 23 of Article I of the Constitution of North Carolina. *See* U.S. Const. amends. V, VI, XIV; N.C. Const. art. I, §§ 19, 23; *State v. Tunstall*, 334 N.C. 320, 432 S.E.2d 331 (1993). "It is implicit in the constitutional guarantees of assistance of counsel and confrontation of one's accusers and witnesses against him that an accused and his counsel shall have a reasonable time to investigate, prepare and present his defense." *State v. McFadden*, 292 N.C. 609, 616, 234 S.E.2d 742, 747 (1977). A defendant must " 'be allowed a reasonable time and opportunity to investigate and produce competent evidence, if he can, in defense of the crime with which he stands charged and to confront his accusers with other testimony.' " *State v. Thomas*, 294 N.C. 105, 113, 240 S.E.2d 426, 433

**STATE v. ROGERS**

[352 N.C. 119 (2000)]

(1978) (quoting *State v. Baldwin*, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970)). This Court has previously recognized and discussed the United States Supreme Court's analysis of these claims:

> In addressing the propriety of a trial court's refusal to allow a defendant's attorney additional time for preparation, the Supreme Court of the United States has noted that the right to effective assistance of counsel "is recognized . . . because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 667 (1984). While a defendant ordinarily bears the burden of showing ineffective assistance of counsel, prejudice is presumed "without inquiry into the actual conduct of the trial" when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is remote. *Id.* at 659-60, 80 L. Ed. 2d at 668. A trial court's refusal to postpone a criminal trial rises to the level of a Sixth Amendment violation "only when surrounding circumstances justify" this presumption of ineffectiveness. *Id.* at 661-62, 80 L. Ed. 2d at 669-70.

*Tunstall*, 334 N.C. at 329, 432 S.E.2d at 336. "To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense." *Id.* at 329, 432 S.E.2d at 337; *see also State v. Harris*, 290 N.C. 681, 228 S.E.2d 437 (1976).

After a thorough review of the record, we are convinced that defendant's counsel had insufficient time to prepare for the defense of this case. While it is clear that defendant's prior counsel, Meacham, filed most of the usual pretrial motions, it is equally clear that there was little or no trial preparation conducted before Meacham was dismissed. There was no evidence that any witness interviews had been performed. The orders based on the trial court's rulings on pretrial motions had not been prepared. A jury questionnaire was not submitted for distribution to prospective jurors even though requested by defendant's prior counsel and allowed by the trial court. Pittman and Davis were appointed to a case involving multiple incidents in multiple locations over a two-day period for which they had only thirty-four days to prepare. It is unreasonable to expect that any attorney, no matter his or her level of experience, could be adequately prepared to conduct a bifurcated capital trial for a case as complex and involving as many witnesses as the instant case.

STATE v. ROGERS

[352 N.C. 119 (2000)]

Prejudice to a defendant is presumed when " 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance' is remote." *Tunstall*, 334 N.C. at 329, 432 S.E.2d at 336 (quoting *Cronic*, 466 U.S. at 659-660, 80 L. Ed. 2d at 668); *see also State v. Maher*, 305 N.C. 544, 550, 290 S.E.2d 694, 698 (1982). This presumption is applied in response to an error committed before the trial began. Therefore, "[p]rejudice is presumed because no one can be certain how trial counsel might have been able to perform if he had had adequate time to prepare for trial." *Maher*, 305 N.C. at 550, 290 S.E.2d at 698. Taking into account the unique factual circumstances of this case, we hold the presumption of ineffective assistance of counsel is applicable here.

In so holding, we emphasize that "courts do not deny due process just because they act expeditiously. The law's delay is the lament of society." *State v. Gibson*, 229 N.C. 497, 502, 50 S.E.2d 520, 524 (1948). In the instant case, however, defense counsel was justified in seeking a continuance of defendant's capital trial under the unique circumstances demonstrated here. Nonetheless, we will vigilantly resist any manipulation by parties or their counsel, in capital cases or otherwise, to "disrupt or obstruct the orderly progress of the court," *McFadden*, 292 N.C. at 615, 234 S.E.2d at 747, under the guise of generalized, unsupported, or otherwise nonmeritorious motions to continue.

Accordingly, defendant is entitled to a new trial. As defendant is entitled to a new trial because of an error that occurred before the trial began, we need not address his remaining assignments of error.

NEW TRIAL.