STEPHENS, Judge.
*620 This appeal concerns the proper procedure a trial court should follow when appointed counsel for an indigent criminal defendant moves during trial for mandatory withdrawal of his representation pursuant to Rule 1.16(a) of the North Carolina Rules of Professional Conduct. We hold that a trial court does not abuse its discretion in permitting withdrawal where appointed counsel cites Comment 3 to Rule 1.16 as grounds for withdrawal and that the court is not required to appoint substitute counsel in such circumstances.
Factual and Procedural Background
Defendant Artie Stevenson Smith, Jr., was indicted on eight counts of offering bribes pursuant to N.C. Gen.Stat. § 14-218 (2013). Those charges arose from Smith's operation of "sweepstakes" or video poker gambling machines in various locations. The evidence at trial tended to show the following:
Lieutenant Bryan Gordon of the Cleveland County Sheriff's Department met Smith in early 2011 while inspecting sweepstakes machines Smith was operating. On 22 March 2011, Gordon was called to a meeting between Smith and Gordon's captain at the sheriff's station.
*621 Gordon was asked to escort Smith out of the station. Smith returned to the sheriff's station the following day and met with Gordon again. On 29 March 2011, Smith called Gordon to request a "voluntary video poker inspection" at South Post Grill the next day. Gordon asked Sergeant Rodney Fitch to accompany him on the inspection, but had no intention of conducting any type of "sting" or undercover operation into bribery. Gordon described the inspection as a "waste of time" because the sweepstakes machines were all unplugged, turned to face the walls, and lacked any software installations. The next meeting between Gordon and Smith took place on 31 March 2011, by which time Gordon had come to believe that Smith was trying to manipulate or trick him. As a result of this intuition, Gordon recorded the meeting, at which Smith sought informant status in exchange for being able to continue to operate his sweepstakes machines. Gordon and Fitch told Smith such an exchange would be illegal and felt convinced that Smith was attempting to bribe them. After Gordon consulted his superiors and the FBI about Smith's behavior, an undercover investigation was initiated with Fitch taking a lead role. Fitch and Smith met multiple times from April to August 2011, with Smith ultimately giving Fitch money totaling almost $15,000.00 during more than a half dozen "money drops." Law enforcement officers recorded all but one of the money drops on video with audio. Smith was subsequently indicted on eight counts of bribery.
On 9 November 2012, Defendant was found indigent and attorney Robert E. Campbell was appointed to represent him. The matter came on for trial at the 12 May 2014 session of Cleveland County Superior Court. Smith's theory of the case was that he had been entrapped by Fitch. On 12 May, when Campbell informed the trial court that Smith planned to admit that he had paid money to Fitch, the trial court discussed the possible consequences of admitting to this element of bribery. Smith confirmed that he understood the risk and affirmed that it was his sole decision to rely on an entrapment defense. Campbell forecast Smith's entrapment theory during his opening argument.
At trial, the money drop videos were admitted and published to the jury without objection. Among other witnesses for the State, Gordon and Fitch testified in detail about their interactions with Smith. On the afternoon of Friday, 16 May 2014, the State closed its case-in-chief, and Campbell moved to dismiss all charges against Smith. The trial court denied that motion and recessed for the weekend. Campbell informed the court that he and Smith would use the weekend to decide whether to present a case for the defense.
*622 When court resumed on Monday morning, 19 May 2014, the following exchange occurred:
*117 THE COURT: Mr. Campbell?
MR. CAMPBELL: Yes, sir.
THE COURT: Based on your email, I assume that you still have a motion before this Court?
MR. CAMPBELL: That's correct. I gave the copy to the clerk. I think she has placed it up on your bench. That would be my motion to withdraw pursuant to Rule 1.16(a) that withdrawal is mandatory as professional considerations require. I think that's required by comment number 3 in Rule 1.16. And I would ask the [c]ourt for permission to withdraw.
My client has indicated that he would be prepared to call one witness. And then he would ask to be able to resume tomorrow with the rest of his case.
THE COURT: Is he going to have retained counsel by then or is he going to represent himself?
MR. CAMPBELL: I would let him speak to that, if that's appropriate.
MR. SMITH: I'm going to make an attempt to retain counsel, Your Honor. If I am unable to, I will represent myself.
THE COURT: If you will have a seat. Let me hear from the [S]tate's table relating to the motion to withdraw at this point.
[THE STATE]: Thank you, Your Honor. I would ask the [c]ourt to deny the motion. I don't think that Mr. Campbell's motion and what it alleges gives the Court enough to make findings on this issue. And I understand it's a delicate issue but I do have case law from the 11th Circuit that says simply stating ethical considerations is not enough for the [c]ourt to make findings. And indeed, we are five days into a jury trial. And this is not a criticism of Mr. Campbell. I understand he's in a difficult position. But I don't think this is enough to give the [c]ourt reason to grant a motion to withdraw at this point.
*623 If the [c]ourt-you know, there are issues of what to do next with counsel. There are cases that say the [c]ourt cannot make a defendant choose between the right to testify and the right to counsel. So I think I would like to pass up some case law for the [c]ourt before the [c]ourt makes its decision, if indeed the [c]ourt would like to look at that case law.
I think there are other options here. Not knowing exactly what the reasons are, there are reasons to believe it has to do with testimony. If there are issues with testimony, I think there are solutions to that such as a narrative testimony without direct examination.
I would ask the [c]ourt to consider having a-I would ask the [c]ourt to consider removing everyone from the courtroom except for the judge, Your Honor, the court reporter, the defendant and his attorney to question about the issues related to potential testimony, the right to an attorney. And specifically I'd ask the [c]ourt to look at Rule 3.3 of the North Carolina Professional Rules of Conduct and comment 9.
I think comment 9 is very important as it relates to this potential problem and what Mr. Campbell's duty is as it relates to the testimony, potential testimony, of the defendant in this case and whether or not he can put him up and what he should do based on reasonable belief versus what he knows.
So I would ask the [c]ourt to look at Rule 3.3 and comment 9. The [S]tate would certainly prefer to continue this case and finish this case with Mr. Campbell as the attorney as it has been for the past five days. I think that would be the best solution to this issue. And that is said with a look forward to potential issues of appeal if Mr. Smith were to represent himself as opposed to having Mr. Campbell.
Because there is a Hobson's choice here between Mr. Smith testifying and Mr. Smith having an attorney. And the courts have ruled at times that there can't be a choice between those things. So I think there are other solutions here that I would urge the [c]ourt to at least consider. And as I've said, I do have some case law from [the] 8th Circuit, the *624 11th Circuit, as well as a North Carolina Court of Appeals case. If the [c]ourt would like copies of those cases, I'd be happy to pass them up.
THE COURT: I'll be glad to take a look at your cases. Anything else from the [S]tate?
*118 [THE STATE]: No, sir.
THE COURT: Final response from defense counsel?
MR. CAMPBELL: Just briefly, Your Honor, I would refer to comment 3 under Rule 1.16.
THE COURT: The [c]ourt believes that in this matter[,] [ Matter of Palmer ] 296 N.C. 638 [252 S.E.2d 784 (1979) ] cited in 1979, the [c]ourt will allow Mr. Campbell to withdraw at this time. Defendant has requested a continuance until tomorrow morning to be present with counsel. At that time we will address further options.
We will reconvene at 9:30 in the morning. At that time if the defendant does not have counsel present, I will quiz him as to whether or not he wishes to move forward on his own. And if he so chooses to represent himself and determine based on the questions that are designed by the Supreme Court of North Carolina whether or not he is capable of doing so and I will make further decisions at that time related to any other steps the [c]ourt needs to take.
I see no reason not to accept Mr. Campbell's motion to withdraw at this time. Sir, you are allowed to leave the case. Thank you very much.
The trial court allowed the motion and continued the case to allow Smith time to obtain private counsel.
At 9:30 a.m. on Tuesday, 20 May 2014, Larry G. Simonds, Jr., made a general appearance for Smith. Campbell also appeared and informed the court that he had discussed Smith's case with Simonds and given Simonds his case file and a copy of his planned closing argument. Simonds suggested altering the proposed verdict sheets to clarify the issue of entrapment, which he confirmed would be Smith's defense. The State countered that the jury instructions should be sufficient to explain entrapment and the court reserved any decision on the matter until a later time. Simonds requested and received a continuance until 2:00 that *625 afternoon to prepare, and a room was made available for him to meet with Smith.
When court resumed that afternoon, the defense called two witnesses, including Smith. As forecast, Smith admitted giving money to Fitch, but stated that Fitch had been the one to suggest an exchange of money for Fitch's assistance. Smith claimed that he felt intimidated and threatened by Fitch and believed he had no choice but to cooperate with this "crooked cop." Smith admitted to all of the events depicted in the videos, but explained that he had been "scared" and "afraid" of Fitch and had only given him money "to have him go away" and not for any "special treatment." At the close of the evidence, the jury deliberated for less than two hours before returning verdicts finding Smith guilty on all eight bribery charges. The trial court consolidated two of the convictions for sentencing and imposed seven consecutive sentences totaling 175-210 months imprisonment. From those judgments, Smith appeals.
Discussion
On appeal, Smith brings forward three arguments: that the trial court erred by (1) allowing Smith's trial counsel to withdraw on the sixth day of trial and (2) failing to appoint substitute counsel for Smith thereafter, and (3) that the private substitute counsel Smith retained was presumptively ineffective based upon the amount of time he had to review Smith's case before proceeding with the trial. We find no error in the trial court's actions and conclude that Smith has failed to establish that he received ineffective assistance from Simonds.
I. Withdrawal of appointed counsel
Smith first argues that the trial court abused its discretion by permitting Campbell to withdraw on the sixth day of trial. We disagree.
Our State's Criminal Procedure Act provides that a trial "court may allow an attorney to withdraw from a criminal proceeding upon a showing of good cause." N.C. Gen.Stat. § 15A-144 (2013). The decision whether to permit withdrawal of counsel is left to the trial court's discretion. State v. McGee, 60 N.C.App. 658, 662, 299 S.E.2d 796, 798 (1983). Appellate courts "will not second-guess a trial court's exercise of its discretion *119 absent evidence of abuse." Buford v. Gen. Motors Corp., 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted). *626 Here, Campbell's written motion to withdraw cited Rule 1.16(a) and asserted:
1. The withdrawal of counsel is mandatory as professional considerations require termination of the representation.
2. Continued representation is not permitted by the rules of professional conduct.
3. The undersigned counsel has engaged in the practice of law for over 21 years and tried numerous criminal jury trials from misdemeanor offenses to several capital murder cases. The undersigned counsel is keenly aware of his ethical obligations and conditions of representation for clients charged with criminal offenses.
Campbell's oral motion before the court was limited to an assertion that "withdrawal is mandatory as professional considerations require. I think that's required by comment number 3 in Rule 1.16." Rule 1.16(a) provides:
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of law or the Rules of Professional Conduct;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged.
N.C. Rules of Prof'l Conduct R. 1.16(a) (2013). In turn, Comment 3 to Rule 1.16 is listed under the heading "Mandatory Withdrawal" and provides:
[3] When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's *627 statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 and 3.3.
Id. cmt. 3 (emphasis added).
We first note that, in light of the direction provided by Comment 3, the course of action suggested by the State as the "best solution" to the conflict facing Campbell, to wit, an in camera discussion among Campbell, Smith, and the court, would not have been a workable procedure for the trial court to follow. At most, perhaps, the trial court could have asked Campbell whether he had considered the distinction discussed in Comment 2 to Rule 1.16. See id. cmt. 2 ("A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.") (emphasis added).
However, we may not consider the correctness of the court's ruling de novo or second guess its exercise of discretion. See Buford, 339 N.C. at 406, 451 S.E.2d at 298. Rather, we are limited to a determination of whether the court's decision was "manifestly unsupported by reason or ... so arbitrary that it could not have been the result of a reasoned decision." See Hennis, 323 N.C. at 285, 372 S.E.2d at 527 (citation omitted). Here, the trial court heard Campbell's assertion of the need for his mandatory withdrawal with specific reference to Comment 3 to Rule 1.16 and also heard the State's arguments *120 for either denying the motion to withdraw or undertaking a specific line of inquiry before ruling. In light of Comment 3's recognition that a "lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient" to permit withdrawal, we cannot conclude that the trial court's decision to accept Campbell's assertion that his withdrawal was mandatory in light of his professional considerations was an abuse of discretion. Accordingly, this argument is overruled.
II. Failure to appoint substitute counsel
Smith next argues that the trial court erred in failing to appoint substitute counsel for Smith after allowing Campbell's mandatory withdrawal pursuant to Rule 1.16(a). We disagree.
*628 Once a criminal defendant is determined to be indigent, "it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation. The professional relationship of counsel so provided to the indigent person he represents is the same as if counsel had been privately retained by the indigent person." N.C. Gen.Stat. § 7A-450(b) (2013). Further,
[o]nce counsel has been appointed to represent an indigent defendant, the appointment of substitute counsel at the request of either the defendant or the original counsel is constitutionally required only when it appears that representation by original counsel could deprive [the] defendant of his right to effective assistance of counsel. Substitute counsel is required and must be appointed when [the] defendant shows good cause, such as a conflict of interest or a complete breakdown in communications.
State v. Nelson, 76 N.C.App. 371, 372-73, 333 S.E.2d 499, 500-01 (1985) (citations omitted; emphasis added), modified and affirmed, 316 N.C. 350, 341 S.E.2d 561 (1986). In other words, "[a] trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of [the] defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded [the] defendant his constitutional right to counsel. " State v. Thacker, 301 N.C. 348, 352, 271 S.E.2d 252, 255 (1980) (citations omitted; emphasis added).
Here, Campbell's representation did not fail to afford Smith his constitutional right to counsel nor did Smith show good cause for the appointment of substitute counsel. Nothing in the record suggests a complete breakdown in communications or a conflict of interest between Campbell and Smith. Indeed, there was no indication that Campbell's work was in any way deficient. Rather, Campbell's withdrawal was caused by Smith himself demanding that Campbell engage in unprofessional conduct. The constitutional right to effective assistance of counsel does not encompass a right to have appointed counsel who is willing to engage in unprofessional conduct.[1] Thus, Smith was simply not entitled to the appointment of substitute counsel.[2] As a result, the trial court *629 did not err in failing to offer Smith substitute appointed counsel, and, accordingly, we overrule this argument.
III. Ineffective assistance of counsel
Smith next argues that Simonds was presumptively ineffective because he entered the case on the seventh day of trial and requested only a four-hour recess to meet with Smith and prepare. We disagree.
Generally,
*121 [t]o prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
State v. Allen, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and internal quotation marks omitted), cert. denied, 549 U.S. 867, 127 S.Ct. 164, 166 L.Ed.2d 116 (2006). As Smith acknowledges, the United States Supreme Court has emphasized that
[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct *630 falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, 694-95 (1984) (citations and internal quotation marks omitted). However, Smith cites cases in which appellate courts have held that the presumption of effective assistance does not apply where counsel fails to obtain a reasonable understanding of the facts of a case or to conduct reasonable investigations as needed. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ; United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ; Horton v. Zant, 941 F.2d 1449 (11th Cir.1991), cert. denied, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). Here, Smith contends that Simonds could not have adequately prepared for the remainder of trial during the approximately four hours between his general appearance on Tuesday morning and the resumption of trial after lunch the same day. Therefore, Smith argues that the presumption of effectiveness does not apply here and that we must hold that Simonds was instead presumptively ineffective. Alternatively, Smith suggests that Simonds' performance was deficient in that he failed to request a longer or an additional continuance to further prepare for the remainder of trial. We are not persuaded by either argument.
Smith cites State v. Rogers, 352 N.C. 119, 529 S.E.2d 671 (2000), as an example of a case where a new trial was granted based on insufficient time to prepare. We find Rogers easily distinguishable on multiple points. There, the defendant faced charges of first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a firearm into occupied property in connection with a violent altercation at a nightclub and a related assault the following day. Id. at 119-22, 529 S.E.2d at 672-73. After his private counsel had been permitted to withdraw, the defendant was appointed counsel thirty-four days before trial. Id. at 122-23, 529 S.E.2d at 674. Appointed counsel reviewed the case file and learned that the defendant's previous counsel had not interviewed any of the numerous witnesses to the attack and sought funds to hire a private investigator to locate the witnesses. Id. at 122, 529 S.E.2d at 674. The trial court allowed the motion for funds just over two weeks before the trial date. Id. Eleven days before trial, the defendant's appointed attorneys moved for a continuance and
argued strenuously that they had not had enough time to prepare the case and would not be able to proceed ... as scheduled.
*122 The private investigator hired by [the]
*631 defendant just the week before had not had time to report any results at the time of the hearing. Further, [one attorney] had not previously acted as lead counsel in a capital case, and [the other attorney] had never participated in a capital case. [The d]efendant's counsel also noted that they were being required to prepare, in effect, for two trials: the guilt/innocence phase and, if necessary, a capital sentencing proceeding. [The d]efendant's counsel also argued that a previous motion for a jury questionnaire had been allowed by the court and that they had not been able to prepare one that could be returned by prospective jurors prior to the commencement of the term of court.
Id. at 123, 529 S.E.2d at 674. The trial court denied the motion for a continuance, trial proceeded, and the defendant was convicted and sentenced to death. Id. at 119-23, 529 S.E.2d at 672-74. Our Supreme Court granted the defendant a new trial, and noted that, "[t]aking into account the unique factual circumstances of this case, we hold the presumption of ineffective assistance of counsel is applicable here." Id. at 126, 529 S.E.2d at 676.
In contrast, in this case, Smith, with the assistance of Campbell, had formed a theory of the case and prepared fully to present it to the jury. All of the State's witnesses had been cross-examined. Campbell has already given Simonds the case file and discussed the case with him before Simonds made his general appearance on Tuesday morning.[3] Simonds then requested until the afternoon to discuss the case for the defense, namely, testimony from Smith and his only other defense witness, an attorney who had worked for Smith previously and who testified briefly to an incident in which Smith had reported Fitch's alleged threats and offers to take money for looking the other way regarding Smith's illegal sweepstakes machines. There were no witnesses left to be located or interviewed, no jury questionnaires to be prepared, no trial strategy to formulate, and no cross-examination to be prepared. Further, Smith's theory of the case was simple and straightforward: he admitted to giving Fitch the money, but argued that it was a case of entrapment. On *632 Tuesday morning, Simonds requested a four-hour continuance, but told the trial court, "I am ready to go forward if necessary at this moment." Simonds' command of the case is further illustrated in the exchange he had with the trial court before the four-hour break:
THE COURT: So that will be-does defense counsel have any idea as to the length of their case in chief at this point?
MR. SIMONDS: We would not be more than two hours. We have two witnesses, including Mr. Smith.
THE COURT: During your period of time between now and 2 o'clock-first let me ask this. Have you had a chance to go over these jury instructions at this point in time?
MR. SIMONDS: I have read through the first three pages of the jury instructions, yes.
....
MR. SIMONDS: To that end, Your Honor, there was some discussion as to guilty, not guilty[,] and not guilty by reason of entrapment according to Mr. Campbell. I don't know if he made a formal motion to add that to the-
THE COURT: He had not. We had had a bench discussion.
MR. SIMONDS: I would like to raise that motion, if I may, at this point to add that on in the interest of brevity.
THE COURT: Do you wish to be heard on that?
MR. SIMONDS: Certainly. I believe that in this case entrapment is the major issue in the case. And that if the jury believes *123 that there was persuasion, coercion[,] and that Mr. Smith didn't act from his free will that the option should be given to the jury to find Mr. Smith not guilty by reason of entrapment.
THE COURT: Response?
[THE STATE]: Your Honor, I would object. I think the instructions are abundantly clear that the court has provided. I think within those instructions the defense of entrapment is explained. And it is explained to the jury that if they believe that entrapment occurred they should find him not guilty. And I think it is, as a result, to add that *633 additional block. The [S]tate believes guilty or not guilty is appropriate.
MR. SIMONDS: Your Honor, I would just add that to save confusion of the jury it may be in their best interest to have that added on.
THE COURT: Do you have any case law that indicates that's the way a jury form should be laid out in this matter?
MR. SIMONDS: Not at this time. I can come to that conclusion at 2 o'clock.
THE COURT: I'll hold that open until 2 o'clock.
MR. SIMONDS: Thank you, Your Honor. Your Honor, I don't know the courtroom rules. I need to send a text to a staff member so they [sic] can start researching that issue.
THE COURT: If you will give me a few minutes to dismiss the jury you will have free rein of the courtroom.
When court reconvened at 2:00 p.m., Simonds delivered copies of the case law he had researched in support of his instruction request. We conclude that this exchange reveals that Simonds, even before the continuance was granted, had a strong understanding of Smith's trial strategy, the pertinent legal issues, and the relevant law. In sum, "the unique factual circumstances" of Rogers which made the presumption of ineffective assistance of counsel applicable, see id. at 126, 529 S.E.2d at 676, are not present in Smith's case.
We likewise reject Smith's suggestion that Simonds' performance was deficient in that he failed to request a longer or an additional continuance to further prepare. As noted supra, Simonds both claimed and appeared to be prepared to proceed even without the four-hour continuance. Smith notes that Simonds told the trial court "I don't know the courtroom rules." However, read in context, Simonds was plainly asking the court whether he could "send a text to a staff member" about researching the case law on the instruction motion just discussed. Smith cites no example of any decision Simonds made or action he took or failed to take when the trial resumed which could be considered deficient. See Allen, 360 N.C. at 316, 626 S.E.2d at 286 (citation omitted).
Moreover, Smith admitted giving thousands of dollars to Fitch and relied solely on his defense of entrapment. Therefore, the only issue before the jury was the relative credibility of Smith versus the law enforcement witnesses for the State. Simonds did not cross-examine the *634 State's witnesses, and Smith makes no complaint about Simonds' direct examination of Smith or of the other defense witness, or of Simonds' closing argument. Thus, even if, arguendo, Smith could show some deficient preparation by Simonds, Smith has utterly failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. This argument is overruled.
NO ERROR.
Judges STEELMAN and McCULLOUGH concur.

We emphasize that absolutely nothing in the record on appeal or in the arguments of either party suggests that Smith's private substitute counsel, Simonds, acted in any manner contrary to the Rules of Professional Conduct.

In turn, we must reject the State's characterization of Smith's response to the choice presented to him by the trial court as a waiver of his right to appointed counsel by retaining private counsel. Simply put, because Smith was not entitled to substitute appointed counsel in the circumstances presented in this case, there was no right for Smith to waive. The election Smith made was not between substitute appointed counsel and private counsel. As noted supra, the trial court gave Smith only the options of private counsel and no counsel at all.

On Tuesday morning, Campbell informed the trial court: "Your Honor, I spoke with substitute counsel last night on the phone. This morning I have provided them [sic] with my closing argument, the trial transcripts, two trial transcripts, which I believe is Officer Hamrick and Officer Fitch and Lieutenant Gordon." Campbell continued: "And I've also provided them with one of the interview summaries from April 8th.... I also have my complete file which is in the car which I will make available to him. And I'm about to go to the car to retrieve more documents to provide to substitute counsel."