STATE OF NORTH CAROLINA v. CHARLES ALONZO TUNSTALL

No. 323A92

(Filed 30 July 1993)

1. Appeal and Error § 471 (NCI4th) — continuance — constitutional rights — review on appeal

While the decision to grant or deny a continuance traditionally rests within the discretion of the trial court, that discretion does not extend to the point of permitting the denial of a continuance that results in a violation of a defendant's right to due process. When a motion for a continuance is based on a constitutional right, the issue is one of law and the trial court's conclusions are fully reviewable on appeal.

Am Jur 2d, Appeal and Error §§ 772 et seq.

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

2. **Constitutional Law §§ 288, 347 (NCI4th)— denial of continuance—effective assistance of counsel—right to confront witnesses**

Implicit in the constitutional provisions guaranteeing the assistance of counsel and the right to confront witnesses is the requirement that an accused have a reasonable time to investigate, prepare and present a defense. A trial court's refusal to postpone a criminal trial rises to the level of a Sixth Amendment violation only when surrounding circumstances justify a presumption of ineffectiveness. If the surrounding circumstances do not establish that it is unlikely that the defendant could have received effective assistance of counsel, the defendant can make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel. If the defendant shows that the time allowed his counsel to prepare for trial was constitutionally inadequate, he is entitled to a new trial unless the State can show that the error, was harmless beyond a reasonable doubt.

**Am Jur 2d, Criminal Law §§ 752, 921-923, 985-987.**

3. **Criminal Law § 261 (NCI4th)— denial of continuance—unavailability of defendant—lateness of discovery—no constitutional violation**

A defendant in a first-degree murder prosecution failed to offer evidence tending to establish a violation of his constitutional right to investigate, prepare and present his defense through the denial of his motion for a continuance where defendant requested a continuance based on the unavailability of defendant until the day before trial and based on the lateness of discovery provided by the State; there is no evidence that defendant and his counsel were unable to consult fully during the seven months between the appointment of counsel and defendant's transfer to Central Prison; defendant testified that he had conferred with his counsel for thirty minutes since he had returned to Warrenton on the day preceding the hearing but did not testify concerning the amount of time he had consulted with his counsel in the period since counsel was appointed; defendant made no showing that his incarceration in Central Prison rendered him inaccessible to counsel; and, in fact, an associate from his counsel's office consulted with defendant for approximately an hour in Central Prison the

week preceding the trial. The record does not reveal the information provided to defendant pursuant to a court order and it is therefore impossible to determine whether additional time to review the materials would have benefited defendant. Defendant's counsel received tardy notice of two oral statements made by defendant, but, far from being unprepared, defendant's attorney skillfully revealed to the jury the weaknesses in the testimony of the witnesses presenting the statements.

**Am Jur 2d, Continuance § 28.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Small, J., in the Superior Court, Warren County, on 12 March 1992, sentencing the defendant to life imprisonment. Heard in the Supreme Court on 18 March 1993.

*Michael F. Easley, Attorney General, by Jane R. Garvey, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Charles Alonzo Tunstall, was indicted on 28 May 1991 on a charge of first-degree murder and was tried non-capitally at the 9 March 1992 Criminal Session of Superior Court, Warren County. On 12 March 1992, the jury returned a verdict finding the defendant guilty of first-degree murder, and the trial court sentenced the defendant to life imprisonment.

On 9 March 1992, prior to the commencement of the defendant's trial, the trial court held a hearing on motions for a bill of particulars and to compel discovery which the defendant had filed on 24 September 1991. The trial court allowed the motion for a bill of particulars in part, ordering the State to provide the defendant with

(1) Exact date, time and location of the alleged murder;

(2) Whether or not the State contends there was an altercation between the deceased and defendant prior to the alleged shooting which constitutes a factual basis for the state's theory on the manner in which the alleged murder was committed;

(3) Whether or not the deceased had a weapon in his possession during such altercation, if any, or at the time of the alleged murder;

(4) Whether or not the State intends to offer evidence of other crimes committed by the defendant for the purpose of showing *scienter quo animo* relating to the alleged murder;

(5) A statement of the facts upon which the State intends to rely which would prove that the killing was done by premeditation or deliberation or was done in the perpetration or attempt to perpetrate a felony.

The trial court further ordered the State to supply "any statements made by the deceased threatening the defendant which would tend to shed light on the defendant's self defense to the alleged murder for which he is being tried." The trial court concluded that the State had provided all other discovery required by N.C.G.S. § 15A-903.

During the motions hearing on 9 March 1992, the defendant's counsel requested a continuance, stating, "I received discovery on Thursday and Friday of last week, and it's my position that we're going to have to request a continuance based on that lateness of discovery and based on the rulings that we are entitled to additional information." The defendant's counsel further noted that the defendant had been incarcerated for safekeeping in Central Prison in Raleigh until 9 March 1992, the day of the motions hearing, and that the items of which counsel had received notice in his office the previous week were oral statements made by the defendant to two deputy sheriffs.

The prosecutor opposed the motion to continue, stating:

I would just like to state for the record that much of this information has already been provided. . . . Discovery was provided at a much earlier date than he stated. In fact, I have a letter dated in February which goes over some of the things that have already been provided to him, including some of the things that the court ordered as a part of what the State needs to provide in the written bill of particulars.

The trial court reserved judgment on the defendant's motion to continue and stated to the prosecutor:

[W]hen you file the written documents in the morning I will consider the timeliness within which [the defendant] received the information and what effect it might have on his ability to prepare a defense and whether or not it will affect his preparation.

I cannot . . . evaluate that, until I have the benefit of what information is going to be supplied to him, whether or not he will need to try to locate additional witnesses.

Maybe it would be that you will supply him no new additional information and consequently he can be ready for trial. I just have no way of knowing.

On the next day, 10 March 1992, the trial court held a hearing on the defendant's motion to continue. The defendant testified that he was originally arrested on 21 April 1991 and incarcerated in Warren County until he made bond on 29 July 1991. Thereafter, he was arrested again on 12 August 1991 and incarcerated in Warren County. He was sent to Central Prison on 25 November 1991, where he remained until he was brought back to Warrenton on 9 March 1992. The week before the 9 March 1992 hearing, a lawyer associated with the defendant's counsel interviewed the defendant at Central Prison for about an hour. The defendant testified that he had conferred with his counsel for only thirty minutes since returning to Warrenton.

In support of the motion to continue, the defendant's counsel argued the following:

It would be our position that while the State provided some discovery material at an early date, that the State did not comply with the bill of particulars until ordered to do so by the Court, and provided that information to the defense counsel at about nine twenty-five this morning. . . . And in addition . . . this case was designated for trial by the State of North Carolina last week. The defendant was brought in at three-fifteen yesterday.

It's my position that under all of the circumstances that have been presented regarding the discovery and the unavailability of this defendant, that . . . we have presented good cause as to why this matter should be carried over to insure that this defendant is given full opportunity to be

prepared to meet the State's evidence and present any evidence he has regarding that evidence at his trial.

After finding that the defendant was charged with murder on 21 April 1991 and that the defendant's trial counsel was appointed on 1 May 1991 to represent him in this case, the trial court denied the defendant's motion to continue. The trial court then proceeded with jury selection and with the trial of the defendant's case.

At the defendant's trial, the State presented evidence which tended to show the following. Deputy J.A. McCowan of the Warren County Sheriff's Department testified that in the early morning hours of 21 April 1991 he responded to a call at the residence of Annie Mae Bullock in Soul City, North Carolina. When he arrived at the Bullock home, he saw the defendant, Charles Tunstall, standing at the back door. The defendant was carrying a double-barreled twenty-gauge shotgun. The defendant said, "You're at the right place, come on in." McCowan then went to the back door and knocked, and the defendant again told him to come in. When McCowan entered the kitchen, the defendant was standing between the kitchen and the living room. As McCowan approached him, the defendant stated, "I shot the mother f---er, he's over there dead." McCowan did not write this statement down and first told the prosecutor about this statement one week before the defendant's trial. The defendant was still holding the shotgun as McCowan approached him. McCowan asked the defendant to put the gun down, and the defendant handed it to him. The defendant told McCowan that he had another gun. The defendant then took a .25-caliber automatic pistol from his pocket and handed it to McCowan.

From the kitchen, McCowan saw the victim, later identified as Larry Leroy Jones, leaning in a kneeling position against one sofa with his head on another sofa. The victim had been shot in the lower back, just above the belt line, and appeared to be dead. McCowan testified that Annie Bullock, the defendant's girlfriend, and Joanne Wyche, the victim's girlfriend, were at the Bullock residence with the defendant when McCowan arrived.

Auxiliary Sheriff's Deputy Ronnie Baskett of the Warren County Sheriff's Department testified that when he arrived at the Bullock residence at about 4:40 a.m., Deputy McCowan and the defendant, who had been handcuffed, were coming out of the house. Baskett placed the defendant in his patrol car and then went inside the

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

house to speak with Annie Bullock and Joanne Wyche. After staying at the residence for approximately three hours, Baskett took the defendant to the Sheriff's Department. During the trip, the defendant asked if the victim were dead and stated, "I hope I killed the mother f—er." Although he informed Detective H.B. Askew of the Warren County Sheriff's Department of the defendant's statement, Baskett did not reduce this statement to writing. Baskett first told the prosecutor about this statement by the defendant a week before the defendant's trial.

Joanne Wyche, the girlfriend of the victim, testified that the victim was a friend of Annie Mae Bullock. Wyche, Bullock, the victim and the defendant were drinking at Bullock's house during the early morning hours of 21 April 1991. While they were sitting in the living room, the defendant left the room. When the defendant returned, the victim stood up to get a cigarette lighter from a table. The defendant then reached under the sofa, pulled out a shotgun and shot the victim in the back. Wyche testified that there had been no altercation between the defendant and the victim before the defendant shot the victim.

Wyche testified that the victim had been carrying a small gun with him. When they arrived at Bullock's home, the victim gave Wyche the gun. Wyche testified that she had the gun in her pocket when the victim was shot. After the defendant shot the victim, the defendant began to wrestle with Bullock and told Wyche to call the police. He then asked Wyche for the gun she had, and she gave it to him. Wyche also heard the defendant call someone and ask that person to get a lawyer for him because he had "shot this boy." The defendant told Wyche that he had nothing against her and that she was an innocent bystander. He also told her that he knew Bullock wanted him dead.

Detective H.B. Askew of the Warren County Sheriff's Department testified that he interviewed Joanne Wyche at the Bullock residence. Wyche told him that there had been a conversation at Bullock's in which the victim told the defendant that Bullock and the defendant should work out their problem without any violence. Wyche stated that while the group was in the living room, the defendant left the room for about ten minutes. When the defendant returned, he told the victim that he knew the victim had a gun. According to Wyche's statement, the defendant and

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

the victim then started arguing, and the defendant reached under the couch, pulled out a gun, and shot the victim in the back.

Askew also interviewed the defendant on the morning of the shooting. Askew testified that the defendant told him that he and Bullock had been having problems since they started dating in May 1990. The defendant stated that on the day of the shooting, the victim had come to the Bullock house with a girl and another person. The defendant and the victim began talking, and the victim stated, "I was the one that you talked to on the phone and I was going to kill you but now that we have talked I like you and I am not going to kill you." The defendant stated that the victim had a gun but had handed the gun to Wyche before the defendant shot him. Askew also testified that Deputy Baskett had told him of the defendant's statement that he "meant to kill the mother f—er."

The defendant testified at trial that he had received a telephone call at Bullock's house on the day before the killing. A person whose voice the defendant did not recognize stated that he was coming to correct a problem that had arisen between the defendant and Bullock during the Christmas holidays. The defendant and Bullock were in bed at about 3 or 4 a.m. when the doorbell rang. Bullock answered the door, and the defendant later came out of the bedroom and saw the victim and his girlfriend. The victim told the defendant that he had come to kill him, but it seemed like the defendant was "an all-right guy." The defendant, the victim, and the two women sat down and were drinking and talking. During the course of the conversation, the victim stated again that he had come to kill the defendant, but the defendant seemed like an all-right guy.

The defendant walked outside for a few minutes, and he heard Annie Bullock telling the victim that she wanted the defendant to get out of her house. The defendant came back inside and sat down on a love seat between the victim and Bullock. The victim then got up and walked over to his girlfriend, Wyche. The victim reached in his pocket and pulled a pistol out, then said, "I came to kill you and since her sons are not going to do anything I am." The victim ejected two shells from the gun and handed the gun to his girlfriend. The defendant then pulled his shotgun from beneath the sofa and told the victim not to move. The victim, however, asked his girlfriend for his gun and started to reach for it. The defendant then raised his shotgun and shot the victim. The defendant testified that he feared for his life when he saw the victim's pistol.

As his sole assignment of error on appeal, the defendant argues that the trial court erred by denying his motion to continue the trial of his case. The defendant contends that his trial counsel was not allowed adequate time to prepare a defense. The defendant argues that the trial court's denial of his motion to continue therefore deprived him of his rights, guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by sections 19 and 23 of Article I of the Constitution of North Carolina, to the effective assistance of counsel and to adequate time to prepare a defense.

[1]    Traditionally, the decision to grant or deny a continuance rests within the discretion of the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 931 (1964); *State v. Roper*, 328 N.C. 337, 348, 402 S.E.2d 600, 606, *cert. denied*, --- U.S. ---, 116 L. Ed. 2d 232 (1991). However, that discretion does not extend to the point of permitting the denial of a continuance that results in a violation of a defendant's right to due process. *See Roper*, 328 N.C. at 349, 402 S.E.2d at 606. This Court has long held that when a motion for a continuance is based on a constitutional right, the issue presented is an issue of law and the trial court's conclusions of law are fully reviewable on appeal. *See State v. McFadden*, 292 N.C. 609, 611, 234 S.E.2d 742, 744 (1977); *State v. Smathers*, 287 N.C. 226, 230, 214 S.E.2d 112, 114-15 (1975); *State v. Hackney*, 240 N.C. 230, 235, 81 S.E.2d 778, 781 (1954); *State v. Farrell*, 223 N.C. 321, 326, 26 S.E.2d 322, 325 (1943).

[2]    The defendant's rights to the assistance of counsel and to confront witnesses are guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by sections 19 and 23 of Article I of the Constitution of North Carolina. *State v. Harris*, 290 N.C. 681, 686-87, 228 S.E.2d 437, 440 (1976). Implicit in these constitutional provisions is the requirement that "an accused have a reasonable time to investigate, prepare and present his defense." *Id.* at 687, 228 S.E.2d at 440. Every defendant must " 'be allowed a reasonable time and opportunity to investigate and produce competent evidence, if he can, in defense of the crime with which he stands charged and to confront his accusers with other testimony.' " *State v. Thomas*, 294 N.C. 105, 113, 240 S.E.2d 426, 433 (1978) (quoting *State v. Baldwin*, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970) ).

## STATE v. TUNSTALL

[334 N.C. 320 (1993)]

In addressing the propriety of a trial court's refusal to allow a defendant's attorney additional time for preparation, the Supreme Court of the United States has noted that the right to effective assistance of counsel "is recognized . . . because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 667 (1984). While a defendant ordinarily bears the burden of showing ineffective assistance of counsel, prejudice is presumed "without inquiry into the actual conduct of the trial" when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is remote. *Id.* at 659-660, 80 L. Ed. 2d at 668. A trial court's refusal to postpone a criminal trial rises to the level of a Sixth Amendment violation "only when surrounding circumstances justify" this presumption of ineffectiveness. *Id.* at 661-62, 80 L. Ed. 2d at 669-670. If, as here, the circumstances surrounding the trial court's refusal to postpone the defendant's trial do not establish that it is unlikely that the defendant could have received effective assistance of counsel, the defendant can "make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel." *Id.* at 666, 80 L. Ed. 2d at 672-73.

This Court has held that the constitutional requirement of a "reasonable time" to prepare mandates "no set length of time for investigation, preparation and presentation . . . , and whether [the] defendant is denied due process must be determined upon the basis of the circumstances of each case." *State v. Harris*, 290 N.C. at 687, 228 S.E.2d at 440; *see also State v. Horner*, 310 N.C. 274, 277-78, 311 S.E.2d 281, 284 (1984). To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. *Harris*, 290 N.C. at 687, 228 S.E.2d at 440. To demonstrate that the time allowed was inadequate, the defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986). If the defendant shows that the time allowed his counsel to prepare for trial was constitutionally inadequate, he is entitled to a new trial unless the State shows that the error was harmless beyond a reasonable doubt. *State v. Gardner*, 322 N.C. 591, 594, 369 S.E.2d 593, 594 (1988); *see also State v. Maher*, 305 N.C. 544, 550, 290 S.E.2d 694, 697 (1982) (plurality opinion).

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

In *State v. McFadden*, this Court held that the denial of a defendant's motion for a continuance violated his constitutional right to the effective assistance of counsel because the defendant and his counsel were permitted inadequate time to prepare for trial. 292 N.C. at 616, 234 S.E.2d at 747. In *McFadden*, the defendant's retained counsel was not present when the defendant's felony case was called for trial. A junior associate of the defendant's counsel appeared in court and requested a continuance on the basis that the defendant's retained counsel was engaged in a trial in federal court and was the only person prepared to try the case. The trial court denied the motion to continue and ordered the junior associate to represent the defendant. The associate, who had tried only one jury case previously, knew nothing about the defendant's case until the day of trial and had discussed the case with the defendant for only ninety minutes. Faced with such circumstances, this Court concluded that the defendant was denied effective assistance of counsel because he and his attorney did not have "a reasonable time in which to prepare and present a defense." *Id.*

In *State v. Maher*, this Court also ordered a new trial for a defendant whose motion to continue was denied. 305 N.C. at 552, 290 S.E.2d at 698. In that case, the defendant's privately retained counsel had prepared the case for trial but withdrew as counsel four days before the trial. The defendant retained new counsel on that same day. An associate of the defendant's new counsel appeared before the trial court and informed the court that the defendant's new counsel was trying a case in federal court and would not be available until the next week. The associate moved for a continuance, and the motion was denied. Five days later, when the case was called for trial, the new counsel moved for a continuance on grounds of inadequate preparation time and informed the trial court that he was not prepared and that he had not yet talked to the defendant. The trial court denied the motion to continue and gave counsel fifteen minutes in which to consult with the defendant. Based on these circumstances, a plurality of this Court concluded that "the trial court's denial of defendant's motion for a continuance infringed upon defendant's constitutional right to effective assistance of counsel." *Id.*

[3]  In the present case, the defendant's counsel requested a continuance based on the unavailability of the defendant until the day before trial and based on the lateness of discovery provided by

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

the State. The facts of the present case, however, do not establish any constitutional violations. The defendant's trial counsel was appointed on 1 May 1991. The defendant was incarcerated in Warren County and available to counsel between that date and 29 July 1991, when the defendant was released on bond. He was at liberty for approximately two weeks. The defendant again was arrested on 12 August 1991 and remained incarcerated in Warren County until 25 November 1991, when he was sent to Central Prison in Raleigh for safekeeping. There is no evidence in the record tending to show that the defendant and his counsel were unable to consult fully with each other during the seven months between the appointment of counsel and the removal of the defendant to Central Prison. The defendant testified at the hearing on the motion to continue only that he had conferred with his appointed counsel for thirty minutes *since he had been returned to Warrenton on the day preceding the hearing*; the defendant did not testify concerning the amount of time he had consulted with his counsel in the more than ten-month period since his counsel had been appointed on 1 May 1991. Additionally, the defendant made no showing that his incarceration in Central Prison in Raleigh rendered him inaccessible to his counsel. In fact, while the defendant was still incarcerated in Central Prison in the week preceding his trial, an associate from his counsel's office consulted with the defendant for approximately an hour. The defendant totally failed to establish that he was deprived of any constitutional right by a lack of a reasonable opportunity to consult with his attorney in preparation for trial.

The defendant further contends that the lateness of discovery provided by the State entitled him to a continuance. The defendant's counsel argued in support of the motion to continue that the State did not comply with the defendant's motion for a bill of particulars until ordered to do so by the trial court on 9 March 1992 and that the State had not provided him with two statements made by the defendant to law enforcement officers until the week before the trial. The record does not reveal what information actually was provided to the defendant pursuant to the trial court's order of 9 March 1992. Therefore, it is impossible for this Court to determine whether additional time to review any materials provided to the defendant on the morning of 10 March 1992 would have benefitted the defendant. *See State v. Horner*, 310 N.C. 274, 278, 311 S.E.2d 281, 284 (1984).

STATE v. TUNSTALL

[334 N.C. 320 (1993)]

The record does show that the defendant's counsel received tardy notice—less than a week before the defendant's trial began—of two oral statements made by the defendant. These statements consisted of (1) the defendant's statement to Deputy J.A. McCowan, "I shot the mother f---er, he's over there dead" and (2) the defendant's statement to Auxiliary Deputy Ronnie Baskett, "I hope I killed the mother f---er." The defendant's counsel had at least three days between notification of these statements and the beginning of jury selection in the defendant's trial in which to investigate the circumstances under which the statements were made. The defendant has not shown that additional time would have enabled his counsel to better confront the witnesses who testified that the defendant made these statements. On cross-examination, both McCowan and Baskett admitted that they had not told the prosecutor about the defendant's statements until the week before his trial. Both witnesses also admitted that they had not reduced the defendant's statements, made nearly eleven months earlier, to writing. Far from being unprepared to confront these witnesses, the defendant's attorney skillfully revealed to the jury the weaknesses in their testimony.

We conclude that in the present case, the circumstances surrounding the trial court's denial of the defendant's motion to continue do not demonstrate that it is unlikely that the defendant could have received effective assistance of counsel. The defendant failed to offer evidence tending to establish a violation of his constitutional right to a reasonable time to investigate, prepare and present his defense. The defendant's evidence did not tend to show that he had inadequate time to confer with counsel or that counsel had inadequate time to prepare for trial. Furthermore, the defendant has not attempted to point to any specific error made by trial counsel which would constitute ineffective assistance at trial. See United States v. Cronic, 466 U.S. at 666, 80 L. Ed. 2d at 672-73. The record before us on appeal indicates that the defendant's trial counsel provided him with a thorough and skillful defense throughout the trial.

For the foregoing reasons, we hold that the defendant received a fair trial free of prejudicial error.

No error.