ELMORE, Judge.
On 11 July 2014, a jury found defendant guilty of negligent child abuse resulting in serious bodily injury and on 14 July 2014, defendant entered a guilty plea to the crime of being a habitual felon. The trial court consolidated both convictions into one judgment and sentenced defendant to 95-126 months of active imprisonment. After careful consideration, we hold that defendant received a trial free from prejudicial error.
I. Background
The State's evidence at trial tended to show the following: On 18 December 2011, defendant fathered a daughter (the infant) with his partner, Tonya Piccola (the mother). The infant was born nearly three months premature, weighing almost three pounds, and spent thirty-nine days in the Neonatal ICU (NICU) before being released into the care of defendant and the mother. At the time the infant was released from the NICU, she weighed four pounds and nine ounces, indicating a normal rate of growth.
The infant, defendant, and the mother lived in a home (the home) along with the mother's five other children. In October 2012, the Stokes County Department of Social Services (DSS) received a report "with allegations of trash being around the home, children using the bathroom outside, and that the children's clothes were dirty and they smelled, and there was roaches in the home." In response, Stokes County Social Services Child Protective Services Worker Lori Priddy (Priddy) visited the home. Although the children were home, neither defendant nor the mother was present. Priddy testified that she observed a toddler wearing a diaper full of urine with "feces running down both legs [.]" Later that day, Priddy returned to the home and met with both defendant and the mother. She inspected the home and noticed trash on the floor and on the bedroom mattresses, glass on the floor, and other general safety hazards. Priddy also saw the infant and described her as "very small for her age" and "never observed any sounds coming out of her." Priddy advised the mother about the safety concerns that needed to be corrected in order for the children to remain in the home.
Priddy recommended to the mother that she arrange a doctor's appointment immediately for the infant. On 17 October 2012, Dr. Lucy Downey, an expert in the field of pediatric medicine, examined the infant. Dr. Downey noted that the infant was "[a]lert, content, very skinny, and small, and behind on her developmental screen." The infant was diagnosed with "failure to thrive," a severe condition defined by a child who is "behind on physical growth and development; and mental, intellectual, motor ... development." Dr. Downey concluded that the "failure to thrive" condition was caused by environmental factors, such as failing to consume a sufficient amount of food.
After speaking with Dr. Downey regarding the infant's condition, Priddy filed a petition for custody of the infant. On 23 October 2012, Priddy went to the home to take custody of the infant. Priddy testified that defendant never asked where the infant was going or when he would be able to see her again, did not appear to be angry or upset, and was just quiet. The infant was subsequently placed with foster parents, Ted and Velvet Kitzmiller. A district court judge ordered weekly visitations in late 2012 for both defendant and the mother. Defendant did not appear for the 18 December 2012 visitation, which was the infant's first birthday and discontinued visitation all together in February 2013. In May 2013, the mother died from a heart attack.
On 26 October 2012, the infant appeared to have a fever, and the Kitzmillers took the infant to Brenner Children's Hospital. Dr. Jesse Pack examined the infant and described her as a "very, very small, emaciated, very small appearing child." The State introduced a photo of the infant that was taken during her admission to the hospital on 26 October 2012, and Dr. Pack testified:
You get a sense again of how small, how emaciated she appears. Again, you can see, you can see the contours of her muscles here, indicating, medical term is wasting. Again, just a state of emaciation of her arms and of her legs. You can see that there's no subcutaneous fat there. You can see her ribs. And you also get a sense overall of how abnormally small she is for her age, keeping in mind that this is a child who's greater than 10 months old at the time that this photograph was taken.
Dr. Pack concluded that the infant suffered from "nutritional failure to [thrive] ... due to lack of nutrition." Dr. Pack described the malnutrition as being "the most severe diagnosis" akin to "starvation."
Defendant testified on his own behalf, stating that he was aware of the infant's small size, fed her consistently, and took her to various doctor appointments. Defendant also called four other witnesses, each of whom testified that defendant properly cared for the infant.
II. Analysis
a.) Motion to Continue
First, defendant argues the trial court committed prejudicial error by denying his motion to continue (the motion) because the denial violated his constitutional right to present a complete defense.
The rule is firmly established that ordinarily a motion for continuance is addressed to the sound discretion of the trial judge and his ruling is not subject to review on appeal in the absence of gross abuse. But when the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the decision of the court below is reviewable.
State v. Evans,40 N.C.App. 390, 390-91, 253 S.E.2d 35, 36 (1979) (citation omitted).
Because defendant contends that the denial of the motion violated his right to present a complete defense, a right guaranteed by the Constitution of the United States, we review this issue de novo. See State v. Cooper,---N.C.App. ----, ----, 747 S.E.2d 398, 404 (2013), appeal dismissed, review denied,367 N.C. 290, 753 S .E.2d 783 (2014). Defendant carries the burden to establish that "the denial was erroneous and also that [the defendant] was prejudiced as a result of the error." State v. Howard,158 N.C.App. 226, 229, 580 S.E.2d 725, 728 (2003) (citation omitted) (alteration in original).
i.) Timeliness of the Motion
Generally, a motion for a continuance in superior court "must be made within the time limitations stated in subsection (c) unless the court permits filing at a later time."N.C. Gen.Stat. § 15A-952(b) (2013). Subsection (c), in relevant part, states:
Unless otherwise provided, [motions to continue] must be madeat or before the time of arraignment if a written request is filed for arraignment and if arraignment is held prior to the session of court for which the trial is calendared. If arraignment is to be held at the session for which trial is calendared, the motions must be filedon or before five o'clock P.M. on the Wednesday prior to the session when trial of the case begins.
If a written request for arraignment is not filed, then [motions to continue] must be filednot later than 21 days from the date of the return of the bill of indictment as a true bill.
N.C. Gen.Stat. § 15A-952(c) (emphasis added).
On the day of trial, defendant made an oral motion to continue the case:
The first motion, Your Honor, is a Motion to Continue this matter. Last month I subpoenaed some records from Medicaid regarding care that was provided to the child. Those records have not come back. The reason that that is material to this case is an issue in this case is the level of care that my client was providing to this child. My client has advised me that they had taken [the infant], ... who it's alleged to have been neglected, to numerous appointments that no medical records are showing up from Forsyth Pediatrics. He's advised they took her to other facilities. We don't have those records at this point. So that is a significant basis for our Motion to Continue. And we would move the Court that this is very material to his case, because it goes to the heart of the issue, of whether or not they provided, him being his ex-fiancée, the care that this child required.
I would point out to the Court that it was provided to us in the discovery from Department of Social Services, provided to us through the District Attorney, that there were no medical records for [the infant]. We since uncovered that there were in fact medical records. So we believe that there could be additional medical records beyond what we've already found. So that's the primary basis for the Motion to Continue.
Here, defendant made an oral motion to continue for the first time on 7 July 2014 before the jury was empaneled. Nothing in the record suggests that defendant made the motion at or before arraignment or previously filed the motion as mandated by N.C. Gen.Stat. § 15A-952(c). As such, the motion was not timely made. Defendant's failure to make the motion in a timely manner is sufficient grounds to deny the motion as a matter of law. See Evans,40 N.C.App. at 391, 253 S.E.2d at 36 ("By waiting until the session for which his trial was calendared and then making an oral motion to continue, defendant failed to comply with [N.C. Gen.Stat. §§ 15A951 and 15A-952 and] [d]efendant's failure to make a timely motion was in itself sufficient basis for its denial."). Indeed, in denying the motion, the trial court stated: "the Motion to Continue was not ... timely filed; and had it been, then the State could have taken steps to avoid expense and unnecessary delay."
ii.) Substance of the Motion
Even if we assume, without deciding, that defendant's constitutional rights were violated by denial of the continuance, the error was harmless beyond a reasonable doubt. See State v. Cook,362 N.C. 285, 296, 661 S.E.2d 874, 881 (2008).
The North Carolina State Constitution and the Constitution of the United States guarantee that "an accused have a reasonable time to investigate, prepare and present his defense."State v. Tunstall,334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (citation omitted). Whether a defendant was denied the constitutionally protected amount of time to conduct the investigation, preparation, and presentation of a defendant's defense is "determined upon the basis of the circumstances of each case." Id.at 329, 432 S.E.2d at 337 (citation omitted). In order to establish that the amount of time granted was insufficient, a defendant must articulate "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." Id.(citation omitted). If a defendant can establish either of these two circumstances, the defendant is entitled to a new trial "unless the State shows that the error was harmless beyond a reasonable doubt." Id.(citation omitted).
The Medicaid records were relevant to defendant's defense to the extent they established that defendant gave appropriate care to the infant by taking her to various health providers and provided insight as to the infant's health per medical records. However, defendant testified that he took the infant to Forsyth Pediatrics several times and was present the day she received her shots. He recalled his presence for four or five other medical visits. He also testified that he fed her Enfamil and other baby food regularly.
Furthermore, the trial court allowed out-of-court statements made by the deceased mother and various medical providers through defendant's direct testimony regarding "medical care, what the deceased mother told the defendant about her concerns, as well as what medical providers told this defendant [.]" Additionally, the trial court reviewed the Medicaid records before ruling on the motion to continue and found "very little significance to those records; in that this defendant has testified to all the medical care he was aware of. And as an aside, there does not appear to be anything different indicated in the material[.]" Thus, defendant's testimony provided the jury with the same evidence that was sought to be introduced by the Medicaid records.
In addition, during oral arguments, defense counsel stated in regard to the Medicaid records: "We would just contend that he needed those records before trial to prepare for trial. They might not have been of use, but then you never know." Defendant has clearly failed to make the requisite showing of "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." Tunstall,334 N.C. at 329, 432 S.E.2d at 337 (citation omitted).
Defendant's argument also fails because his own actions contributed to any impairment of his ability to prepare his defense. See State v. Gentry,---, N.C.App. ----, ----, 743 S.E.2d 235, 244 (2013), review denied,367 N.C. 228, 747 S.E.2d 552 (2013) (holding that defendant failed to establish prejudicial error from the trial court's denial of his motion for a continuance, in part, because "most, if not all, of the limitations on the ability of his trial counsel to prepare for trial appear to have resulted from Defendant's own conduct"). Defendant was indicted for the felony child abuse charge on 6 January 2014 and the trial date was 7 July 2014. While the case was pending, defendant was not being held in prison as he was "out on bond[.]" As such, defendant had the opportunity to locate the Medicaid records and any other medical evidence to secure them for trial.
Accordingly, defendant had adequate time to prepare for trial and any hindrance to his ability to present a complete defense stems, in large part, due to his own inaction. Based on the foregoing analysis, we hold that the trial court did not commit prejudicial error by refusing to grant defendant's motion to continue.
b.) Denied Admission of the DS50-10 Narrative Report
Next, defendant argues the trial court committed prejudicial error by denying his request to admit a report because:
Ms. Priddy was one of the State's principal witnesses about the conditions in the home that he and [the mother] had been providing for their infant daughter. Had the court allowed the document into evidence for the purpose of impeaching Ms. Priddy's testimony, there is a reasonable possibility that the trial would have reached a different result.
The report, entitled DS50-10, was a narrative of an investigation of defendant and the mother by a social worker, Ellen Isom (Isom). DSS apparently terminated Isom's employment for producing false time sheets. Specifically, Isom fraudulently claimed time for making home visits that never occurred. Defendant moved for admission of the report into evidence to impeach Priddy's testimony regarding the hazardous conditions in the home and the dire physical condition of the infant.
Even if we assume arguendothat the trial court erred by denying defendant's request to admit the report, defendant has failed to establish prejudicial error. See State v. Ferguson,145 N.C.App. 302, 307, 549 S.E.2d 889, 893 (2001) ("Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial.").
Although the trial court did not admit the report into evidence, defendant's counsel asked Priddy about the contents of the report. During cross-examination, defendant's counsel questioned Priddy about specific statements in Isom's report, which included observations that the children were "appropriately dressed and appeared healthy;" the home was "messy, but livable [;]" and the infant was "clean[.]" Priddy recalled reading a portion of the report that stated, "[s]ervices not recommended as no neglect was found [.] ... No evidence was found the children were left unsupervised as had been reported[.]" Thus, defendant was able to impeach Priddy based on Isom's report even though the report itself was not admitted into evidence.
Additionally, on 17 October 2012, the infant had an appointment with Dr. Downey. Dr. Downey diagnosed the infant with "failure to thrive," a severe medical condition "meaning the child isn't doing well[,]" as a result of the infant not having been fed sufficiently. Mr. Kitzmiller, the infant's adopted parent, testified that on 23 October 2012, a social worker delivered the infant to his home. He described the infant as "very thin, very dirty, very small" with bug bites all over her body, "oozing" and "scabbed over." He also observed that the infant's hair was "matted down and stuck down with scabbing and dirt."
The Kitzmillers began feeding the infant high-calorie formula every few hours pursuant to Priddy's instructions. When they took the infant to Dr. Downey's office again on 24 October 2012, the infant gained seven ounces, which Dr. Downey stated was "consistent with catch-up growth, the child being fed when she hadn't [previously] been fed." On 26 October 2012, Dr. Pack characterized the child as "emaciated" and later diagnosed her with marasmus, "a fancy medical word for starvation." Dr. Pack testified that the child was at risk of death due to her being in the "most severe" condition.
Based on the foregoing evidence, even if the trial court would have allowed Isom's report into evidence, defendant has failed to prove that a different result would have been reached at trial.
c.) Use of Documents From a Previous Civil Litigation Matter
Finally, defendant argues that the trial court erred by permitting the State to use documents from defendant's previous civil litigation against him for purposes of cross-examination to prove elements of the offense charged against him in violation of N.C. Gen.Stat. § 1-149. We disagree.
We review de novowhether the introduction of pleadings violated N.C. Gen.Stat. § 1-149. State v. Young,---, N.C.App. ----, ----, 756 S.E.2d 768, 779 (2014), review allowed, writ allowed,367 N.C. 518, 762 S.E.2d 195 (2014). Pleadings consist of a complaint, an answer, a reply to a counterclaim, an answer to a crossclaim, a third-party complaint, and a third-party answer. N.C. Gen.Stat. § 1A-1, Rule 7(a) (2013). N.C. Gen.Stat. § 1-149, in relevant part, states: "No pleading can be used in a criminal prosecution against the party as proof of a fact admitted or alleged in it." N.C. Gen.Stat. § 1-149 (2013). However, civil pleadings and judgments are admissible in a criminal trial where they are relevant and used for a different purpose, including, but not limited to, bias, motive, intent, impeachment, or corroboration. See State v. Rowell,244 N.C. 280, 281, 93 S.E.2d 201, 202 (1956) ; State v. Phillips,227 N.C. 277, 278-79, 41 S.E.2d 766, 766 (1947) ; State v. McNair,226 N.C. 462, 464, 38 S.E.2d 514, 516 (1946).
i.) State's Exhibit # 20
State's Exhibit # 20 was a legal document signed by defendant in December of 2012 whereby defendant stipulated and agreed that the infant had been neglected. The following colloquy occurred during the State's cross-examination of defendant:
Q: Mr. Sellers, in December of 2012 did you stipulate, agree, that your daughter had been neglected in a legal document?
A: Yes.
...
Q: Mr. Sellers, I'll show you this document. It's, it's handwritten, but can you read the title of it, please?
A: It says: In as [sic] Sellers.
Q: And what does the body of the statement say?
A: The parties update and agree that the child was neglected and that child was failure to thrive and the mother failed to follow up with necessary, necessary appointments and services recommended by [medical professionals].
...
Q: So you agree that [the infant] was in fact neglected when she was taken into DSS custody.
...
A: Yes.
Defendant's argument fails for three reasons. First, this document is not a pleading as defined by North Carolina Civil Procedure Rule 7. The document is not a complaint, an answer, a reply to a counterclaim, an answer to a crossclaim, a third-party complaint, or a third-party answer. SeeN.C. Gen.Stat. § 1A-1, Rule 7(a). Based on the record, the document is merely an admission that the infant had been neglected. Defendant broadly asserts that this document is a pleading but articulates no argument in support of this assertion.
Second, even if we were to rule that the document is a pleading, a review of the record indicates that the State used Exhibit # 20 to impeach defendant's direct examination testimony, not to prove a fact or element of the offense. On direct, defendant testified about how he and the mother properly fed the infant and took her to medical visits. However, the State used Exhibit # 20 to attack the credibility of defendant's testimony, which does not violate N.C. Gen.Stat. § 1-149. Additionally, although defendant admitted that a limiting instruction was not requested at trial, defendant contends that the trial court should have issued a limiting instruction anyway. This argument is without merit. "When the defendant does not request such a limiting instruction, it is not reversible error on appeal if the limiting instruction is not given." State v. Herbin,298 N.C. 441, 452, 259 S.E.2d 263, 271 (1979) (citations omitted). Here, because defendant did not request a limiting instruction regarding the impeachment purpose of the document, there is no reversible error.
Third, defendant argues that the State used Exhibit # 20 "to show [defendant's] admission that his daughter was 'neglected,' and neglect, in the form of a 'grossly negligent omission' was an element of the offense alleged against him." However, Exhibit # 20 did not prove defendant's "grossly negligent" conduct, an element of the criminal charge. The exhibit established the status of the infant as neglected rather than defendant as having acted in a grossly negligent manner. See In re Montgomery,311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) ("In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent."). Additionally, the only evidence of negligent conduct in the document can be attributed to the mother as she "failed to follow up with necessary ... appointments and services [.]" Based on the foregoing reasons, defendant's argument regarding State's Exhibit # 20 fails.
ii.) State's Exhibit # 21
State's Exhibit # 21 was a letter written by defendant on 12 August 2013 to Ms. Rebecca Maser, a DSS foster care social worker. In that letter, defendant indicated that he did not want to give up his parental rights with regard to the infant and that he would be prepared to perform his fatherly duties. This letter, however, is not a pleading as defined by North Carolina Civil Procedure Rule 7. The document is not a complaint, an answer, a reply to a counterclaim, an answer to a crossclaim, a third-party complaint, or a third-party answer. SeeN.C. Gen.Stat. § 1A-1, Rule 7(a). Defendant concedes in his brief that "the second [exhibit] was a letter from the respondent Mr. Sellers to an agent of the petitioner in the previous civil action initiated by DSS and, therefore, may not have been a formal 'pleading[.]' " As such, the letter is not barred by N.C. Gen.Stat. § 1-149.
iii.) State's Exhibit # 22
Defendant was previously served with a motion to terminate his parental rights in a prior civil action. In response, defendant signed a document entitled "Relinquishment of Minor for Adoption by Parents or Guardian" (State's Exhibit # 22). Based on the record, this document is not a pleading as defined by North Carolina Civil Procedure Rule 7. The document is not a complaint, an answer, a reply to a counterclaim, an answer to a crossclaim, a third-party complaint, or a third-party answer. SeeN.C. Gen.Stat. § 1A-1, Rule 7(a). Thus, N.C. Gen.Stat. § 1-149 does not apply.
Even if we were to rule that the document is a pleading, the State used Exhibit # 22 to impeach defendant's testimony that it was always his intention to have the infant in his home and in his care. Defendant acknowledged that he signed the document "without coming to court and having a trial to determine whether [his] parental rights should be terminated[.]" The trial court specifically ruled that, with regard to Exhibit # 22, "any admission, judicial admission [defendant] may have made would be competent for purposes of impeachment." Because the State used Exhibit # 22 to impeach defendant's prior testimony, it is not barred by N.C. Gen.Stat. § 1149.
Additionally, even if the State used Exhibit # 22 to prove the facts admitted or alleged in it, it would be non-prejudicial. Defendant asserts in his reply brief that this exhibit was used to prove that defendant was the infant's father, a necessary element of the charged crime. However, defendant admitted at trial that he was the father of the infant. Thus, defendant's argument regarding State's Exhibit # 22 fails.
iv.) Prejudicial Error
Assuming arguendothat the trial court erred by allowing the State to use the aforementioned exhibits on cross-examination of defendant, the error was not prejudicial in light of the other abundant evidence of defendant's guilt previously discussed.
III. Conclusion
In sum, the trial court did not commit prejudicial error by: denying defendant's motion to continue, denying defendant's request to admit the DS50-10 Narrative Report into evidence, or permitting the State to use documents from defendant's previous civil litigation during the criminal trial.
NO PREJUDICIAL ERROR.
Judges CALABRIA and DILLON concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 14 July 2014 by Judge David L. Hall in Stokes County Superior Court. Heard in the Court of Appeals 20 May 2015.