IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-165

No. 420A20

Filed 17 December 2021

STATE OF NORTH CAROLINA

v.

DMARLO LEVONNE FAULK JOHNSON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 273 N.C. App. 358 (2020), finding no error after appeal from a judgment entered on 12 May 2017 by Judge Rebecca W. Holt in Superior Court, Durham County. Heard in the Supreme Court on 5 October 2021.

*Joshua H. Stein, Attorney General, by Zachary K. Dunn, Assistant Attorney General, for the State-appellee.*

*Marilyn G. Ozer for defendant-appellant.*

BARRINGER, Justice.

¶ 1    In this case, we address whether the trial court committed constitutional error when it denied defendant's motion to continue. The motion to continue was based on the State's disclosure on the eve of trial that it planned to use select phone calls of over 800 recorded calls made by defendant from jail (the calls). Previously, the State had informed defense counsel that it did not intend to introduce any of the calls and that the State had ceased reviewing the calls. We conclude that on the record before

us, the trial court erred. However, the error was harmless beyond a reasonable doubt as to one of defendant's convictions, first-degree murder. The jury found defendant guilty of first-degree murder under the felony murder rule with assault with a firearm on a government official as the underlying felony. Because the calls were admitted as rebuttal evidence to defendant's evidence of lack of specific intent, there can be no prejudice as a matter of law to the conviction of a general-intent crime. In this case, the general-intent crime is assault with a firearm on a government official. Therefore, there is no prejudice to a felony murder conviction premised on that general-intent crime. Accordingly, we affirm that conviction, and we only order the trial court to vacate the judgment of and order a new trial on the conviction dependent on a finding of specific intent, robbery with a dangerous weapon.

## I.    Background

Armed with a handgun, defendant robbed a gas station, shot the gas station attendant, and pointed a firearm at law enforcement on 4 July 2015. The gas station attendant died. The grand jury indicted defendant for robbery with a dangerous weapon, assault with a firearm on a government official, and murder. While defendant's actions were recorded by a security camera and he was apprehended fleeing the gas station, defendant's state of mind was disputed. Defendant through his counsel filed notice of three defenses: (1) mental infirmity and insanity under N.C.G.S. § 15A-959(a), (2) mental infirmity and diminished capacity under N.C.G.S.

§ 15A-959(b), and (3) voluntary intoxication.

Relevant to this appeal, on 12 April 2017, the State gave defense counsel a compact disc (CD) with 335 calls made by defendant from jail. A day later, the State gave notice to defendant of its intent to offer hearsay evidence from a witness, concerning statements made by the victim about a confrontation with defendant.

Defense counsel asked defendant's investigator to review the calls. However, the investigator for defendant could not open the contents of the CD that contained the calls. Accordingly, defense counsel contacted and informed the district attorney's office that they could not open the contents of the CD. On 18 April 2017, defense counsel followed up with the State by email. In that email, defense counsel informed and inquired of the State as follows: "I will not have time to listen to [the calls] and do not think I have anyone in my office that can assist. Please let me know if there are any calls which you believe are somehow relevant to your case." The State responded as follows:

> I had requested the calls once [the State's] Inv[estigator] informed me that there were issues securing [the appearance of a witness who encountered defendant in the gas station]. . . . I haven't listen[ed] to most of them, but it is clear that [defendant] indicates that he will not talk on the phone about certain matters and will only talk in person. At this time[,] I do not intend to use any of those calls, and I am no longer requesting anyone to continue listening to the calls.

Essentially, the State had obtained the calls to assess whether defendant knew of or

had sought to intimidate the witness who encountered defendant in the gas station, but the State decided that reviewing the calls would not be helpful and stopped listening to the calls.

¶ 5     That same day, the State provided a new CD of the 335 calls to defense counsel, which defendant's investigator could open. Given the State's response and the fact that it was less than a week before trial, defense counsel and defendant's investigator "dropped listening" to the calls. Defense counsel and defendant's investigator instead spent a considerable part of the week before trial trying to locate the witness identified in the State's 13 April 2017 notice.

¶ 6     On 20 April 2017, the State gave notice to defendant of its intent to offer hearsay evidence from another witness, the gas station owner. That same day, the State filed an amended version of the 13 April 2017 notice and included an exhibit containing the substance of the witness's statements.

¶ 7     Also on 20 April 2017, the State provided defense counsel with a CD of 545 additional calls made by defendant from jail. Defense counsel emailed the State about these calls, and the State responded, without qualification, "I do not intend to introduce any of the jail calls." The State had obtained these calls to see if defendant's girlfriend said anything during the calls which may have been helpful to the State's case. Based on the State's representation, defense counsel did not ask anyone to help him listen to the calls. April 20 was also the last day defendant's investigator was at

work before the trial commenced because the investigator had contracted pneumonia. On 21 April 2017, defense counsel filed an objection to the State's offering of hearsay evidence.

¶ 8 At 5:50 p.m. on 23 April 2017, the State emailed defense counsel stating as follows:

> [I]t occurred to us that there are recordings of the [d]efendant on [the day he met with defendant's expert, Dr. George Corvin], although not with Dr. Corvin. The recordings are of the jail calls. We have listened to some jail calls and decided that they are relevant material to his state of mind as well as his memory of the night of the murder.

The prosecutor also identified that the calls were "from August 12–August 14, 2015" and were "numbered 251–274."

¶ 9 The next day, 24 April 2017, the matter was called for trial. Defense counsel moved for a continuance to afford him time to review the calls and deal with how they might affect the testimony of defendant's two experts. Defense counsel had not been able to listen to the twenty-three calls identified by the State. Defense counsel argued that defendant's rights would be violated under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections Nineteen and Twenty-Three of the North Carolina Constitution, specifically defendant's rights to due process, effective assistance of counsel, and confrontation of witnesses. Defense counsel also tendered into the record for the trial court's consideration the emails

between defense counsel and the State, as summarized herein, and the CDs containing the over 800 calls.

¶ 10     The trial court denied the motion to continue.[1] After the denial of the motion to continue, defense counsel further requested that he be given a day or a half-day after the completion of jury selection but before opening statements to listen to the four hours of calls identified by the State and to speak with his experts. Defense counsel indicated that he had spoken to his experts and they would make themselves available.

¶ 11     After jury selection was completed on Friday, 28 April 2017, defense counsel, at around 11:30 a.m., renewed his request for a continuance. Defense counsel asked the trial court to delay opening statements until Monday to afford him the rest of the day and the weekend to review the calls and talk with his experts. Defense counsel argued that he had not had the time to listen to all twenty-three calls, had yet to understand them, and would be compelled to make an opening statement without knowledge of material rebuttal evidence. The trial court denied the request, and the State and defense counsel proceeded to present their respective opening statements.

¶ 12     Ultimately, defendant was convicted of first-degree murder under the felony murder rule with the underlying felony being assault with a firearm on a government

---

[1] The trial court orally ruled on the motion to continue. No order with findings of fact or conclusions of law was entered.

official, robbery with a dangerous weapon, and assault with a firearm on a government official. The trial court imposed a term of life without parole for first-degree murder and a consecutive term of 60 months to 84 months for robbery with a dangerous weapon. The trial court arrested judgment on assault with a firearm on a government official.

¶ 13     On appeal, a divided panel of the Court of Appeals concluded that the trial court committed no reversible error. *State v. Johnson*, 273 N.C. App. 358, 367 (2020). The Court of Appeals held that regardless of the standard of review, any error by the trial court in not allowing the motion to continue was not prejudicial to the felony murder conviction because the underlying felony was a "general[-]intent" crime, and the calls were admitted to rebut testimony from defendant's expert concerning defendant's diminished capacity. *Id.* at 361–63. The Court of Appeals also concluded that the denial of the motion to continue was not an error. *Id.* at 363, 366–67. The dissent disagreed, contending that the majority failed to apply the correct standard of review for addressing a motion to continue based on a constitutional right and that under the correct standard, defendant is entitled to a new trial. *Id.* at 367–68 (Stroud, J., dissenting). Defendant appealed as of right based on the dissent.

## II.     Standard of Review

¶ 14     A ruling on a motion to continue is addressed to the sound discretion of the trial court and reviewed on appeal for abuse of discretion unless the motion "raises a

constitutional issue." *State v. Searles*, 304 N.C. 149, 153 (1981). If the motion raises a constitutional issue, "the trial court's action upon it involves a question of law which is fully reviewable by an examination of the particular circumstances of each case." *Id.* However, regardless of the nature of the motion to continue, whether constitutional or not, a denial of a motion to continue is "grounds for a new trial only upon a showing by [the] defendant that the denial was erroneous and that [ ]his case was prejudiced thereby." *Id.*

¶ 15        "If the defendant shows that the time allowed his counsel to prepare for trial was constitutionally inadequate, he is entitled to a new trial unless the State shows that the error was harmless beyond a reasonable doubt." *State v. Tunstall*, 334 N.C. 320, 329 (1993); *see* N.C.G.S. § 15A-1443(b) (2019) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.").

### III.   Analysis

¶ 16        Defendant's motion to continue raised a constitutional issue, requiring de novo review by this Court. As set forth herein, exercising our judgment anew, we conclude the trial court erred by denying the motion to continue. Defendant had constitutionally inadequate time to address the calls. Yet, the trial court's constitutional error was harmless beyond a reasonable doubt as to defendant's

conviction of first-degree murder under the felony murder rule with the underlying felony being assault with a firearm on a government official. The calls were admitted as rebuttal evidence to defendant's evidence of lack of specific intent. However, the offense of assault with a firearm on a government official does not require a defendant to have a specific intent. It is a general-intent crime. Therefore, there can be no prejudice from the denial of the motion to continue as a matter of law to the conviction of assault with a firearm on a government official or felony murder resulting therefrom, because the calls were not relevant to any element of these crimes.

## A. Constitutional adequacy of time to prepare for trial

¶ 17    As defendant's request for a continuance before the trial court raised a constitutional issue, we review de novo the constitutional issue. The constitutional guarantees of assistance of counsel and confrontation of one's accusers and adverse witnesses implicitly provide that "an accused and his counsel shall have a reasonable time to investigate, prepare[,] and present his defense." *State v. Rogers*, 352 N.C. 119, 124 (2000) (quoting *State v. McFadden,* 292 N.C. 609, 616 (1977)). "To establish a constitutional violation, a defendant must show that he did not have [adequate] time to confer with counsel and to investigate, prepare[,] and present his defense." *Tunstall*, 334 N.C. at 329. "To demonstrate that the time allowed was inadequate, the defendant must show 'how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his

motion.' " *Id.* (quoting *State v. Covington*, 317 N.C. 127, 130 (1986)). What constitutes inadequate time "must be determined upon the basis of the circumstances of each case." *Id.* (quoting *State v. Harris*, 290 N.C. 681, 687 (1976)).

¶ 18     Exercising our judgment anew, we conclude that the trial court erred by denying defendant's motion to continue because defendant showed the trial court that he did not have reasonable time to address the calls, that he would have been better prepared had the continuance been granted, and that he was materially prejudiced by the denial of his motion.[2] In other words, defendant demonstrated to the trial court that the time allowed his counsel to prepare his defense was constitutionally inadequate.

¶ 19     We first recognize that the time available to defense counsel to address the calls was limited. Defense counsel informed the trial court and tendered into the record the calls and the emails reflecting that defense counsel received notice at 5:50 p.m. the night before jury selection started that the State intended to use twenty-three of the calls—after the State had indicated that it was not using any of the calls and defense counsel and investigator had stopped reviewing them. Under these

---

[2] Here, defense counsel showed the trial court that he would be better prepared if the continuance had been granted and counsel's actual performance supports defendant's claim of material prejudice. Accordingly, we do not conclude or hold that prejudice could be presumed in this matter. *See United States v. Cronic*, 466 U.S. 648, 662 (1984) ("[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial."); *State v. Rogers*, 352 N.C. 119, 126 (2000).

unique circumstances, where defense counsel relied on the State's representations, one of which was unqualified, and was reasonably preoccupied with other filings by the State and preparation for trial, we consider the relevant date and time for our analysis to be when the State informed defense counsel that the State intended to use the twenty-three calls. Thus, this case is unlike *Tunstall,* where "defendant's counsel had at least three days between notification of [two oral] statements [made by defendant to law enforcement] and the beginning of jury selection in the defendant's trial in which to investigate the circumstances under which the statements were made." *Id.* at 332.

¶ 20    Further, defendant's sole counsel only had the early mornings of and the late evenings of five days to listen to the calls and assess their impact on defendant's defense before making his opening statement to the jury. During the day, defense counsel was in court for the pretrial proceedings and jury selection for this case and unable to listen to the 3 hours and 53 minutes of the identified twenty-three calls or any other of the more than 800 calls. Defendant's investigator was also unavailable due to pneumonia.

¶ 21    We also find defendant's showing in support of his position that he would have been better prepared for trial both sufficient and compelling. Defense counsel indicated to the trial court on 28 April 2017 that with a delay of opening statements

until the next business day, Monday, he could listen to all twenty-three calls,[3] determine their implication on defendant's defense, and then consult with his expert. Defense counsel specifically identified that he would speak to defendant's expert, Dr. Corvin, over the weekend to discuss the calls and their implication. The State had isolated these calls specifically to rebut Dr. Corvin's testimony and defendant's sole defense that he was incapable of forming the intent to commit the charged crimes. The twenty-three calls were communications made by defendant the day before, the day of, and the day after Dr. Corvin first met with defendant on 13 August 2015, and Dr. Corvin noted unusual behaviors relevant to his opinions.[4]

¶ 22     Finally, defendant has met his burden to show that he was prejudiced by the denial of the motion to continue. Defendant argues that the denial of the motion to continue impaired defense counsel's ability to give an "accurate forecast of his expert testimony and his anticipated response to the [S]tate's use of [the] calls" in his opening statement. Under the circumstances of this case and upon review of defense counsel's actual performance at trial, we agree.[5] As defendant identified, the calls were intended to undermine defendant's only defense to the charge of robbery with a

---

[3] The State ultimately decided to tender as rebuttal evidence only nine of the twenty-three calls. The State did not notify defendant of this until 8 May 2017, which was after opening statements were made.

[4] Dr. Corvin also met with defendant on 20 April 2016.

[5] However, as addressed in section B of this opinion, this error was not prejudicial as a matter of law to the conviction of first-degree murder under the felony murder rule.

dangerous weapon—his state of mind as impacted by his mental health and consumption of impairing substances. And this defense was complicated and involved experts.

¶ 23     Examining defense counsel's actual performance, the opening statement of defense counsel also reflects a vagueness regarding the evidence from defendant's experts. The opening statement concerned testimony about the impact of mental health conditions generally rather than specific details concerning defendant, even though Dr. Corvin ultimately testified as an expert in forensic psychiatry that the combination of bipolar disorder, an intellectual disability, and intoxication, which he found defendant to have on 4 July 2015 at the time of the alleged crimes, rendered defendant without the ability to form specific intent. Robbery with a dangerous weapon is a specific-intent offense, requiring the State to prove that defendant had the intent to steal. *State v. Smith*, 268 N.C. 167, 169 (1966). Further, even though defendant had retained and noticed two mental health experts, Dr. Corvin and Dr. Jennifer Sapia, the opening statement did not refer to expert*s*. Instead, the singular, expert, was used. Thus, at the time of opening statements, defense counsel's ability to provide meaningful adversarial testing of the State's case against defendant concerning the robbery with a dangerous weapon charge was compromised by the

inadequacy of time afforded him to prepare his defense.[6] *Cf. United States v. Cronic*, 466 U.S. 648, 656 (1984) ("When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred." (footnote omitted)). Thus, we are persuaded that the impact of the denial of the motion to continue was material and prejudicial.

¶ 24        Ultimately, what amount of time is constitutionally adequate or constitutionally inadequate depends on the circumstances of the case and requires a case-by-case assessment. Here, the assessment of the circumstances leads to our holding that the amount of time afforded defendant was constitutionally inadequate. Hence, we conclude that defendant has shown that the trial court committed constitutional error by denying defendant's justifiable request for delay in his motion to continue.[7]

---

[6] Notably, the jury found defendant not guilty of the other charged specific-intent offense—first-degree murder based on malice, premeditation, and deliberation. *See State v. Chapman*, 359 N.C. 328, 374 (2005) ("Specific intent to kill is an essential element of first[-]degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation." (cleaned up)). Thus, this is not a case where the evidence was overwhelming in the favor of the State concerning defendant's state of mind. Therefore, an impact on defense counsel's opening statement could have been prejudicial.

[7] The Supreme Court of the United States has recognized that the amount of time the government spends investigating a case or the number of documents that the government reviews is not necessarily relevant to the constitutional adequacy of defense counsel's preparation time. *Cronic*, 466 U.S. at 663. Here, the State intended to use twenty-three calls recorded on the day of, the day before, and the day after Dr. Corvin first met with defendant as rebuttal evidence. Therefore, especially in this context, our holding that the trial court

**B. Harmless error**

Since we conclude from our de novo review of the constitutional issue in defendant's request for a continuance that the trial court erred, the State bears the burden of showing that the error was harmless beyond a reasonable doubt. However, any error by the trial court was harmless beyond a reasonable doubt as a matter of law regarding the conviction of first-degree murder based on the felony murder rule because there was no factual dispute regarding whether or not defendant committed the offense—the evidence supporting his conviction was uncontroverted[8]—and the admitted evidence that solely addressed defendant's mental state was entirely irrelevant to this offense given that the legal elements of this conviction do not require anything more than general intent. *See Johnson*, 273 N.C. App. at 361–63. In this matter, the underlying felony supporting the jury's felony murder conviction— assault with a firearm on a government official—is a "general-intent offense." *State v. Page*, 346 N.C. 689, 700 (1997) (holding the offense of assault with a firearm on a

erred by not granting a continuance until Monday for opening statements in no way endorses the contention that effective assistance of counsel necessitates review of all the calls.

[8] In fact, in both the opening statement and closing argument at trial, defense counsel did not contest any element of the offenses charged except intent. His sole defense was that defendant did not act with the requisite intent because of his diminished capacity from a mixture of a manic bipolar episode, mental disability, alcohol intoxication, and cocaine digestion. Later at the jury charge conference, defense counsel acknowledged that a diminished capacity argument was unavailable with respect to the general intent charges. Nevertheless, he still argued that the jury should receive an instruction that they could consider the facts allegedly demonstrating diminished capacity in connection with the knowledge element of the general intent crime.

government official is a general-intent offense). A felony murder conviction requires no intent other than the intent necessary to secure conviction of the underlying felony. *State v. Richardson*, 341 N.C. 658, 666–67 (1995). Accordingly, defendant's conviction of first-degree murder under the felony murder rule with the underlying felony being assault with a firearm on a government official is also a general-intent offense.

¶ 26 General-intent offenses are offense**s** "which only require the doing of some act." *State v. Jones*, 339 N.C. 114, 148 (1994). In contrast, specific-intent offenses are offenses "which have as an essential element a specific intent that a result be reached." *Id*. Thus, any evidence in this case[9] supporting or negating that defendant was incapable of forming intent at the time of the crime is not relevant to a general-intent offense. *See id.* (holding intoxication defense is not available for general-intent offense); *Page*, 346 N.C. at 700 (holding diminished-capacity defense is not available for a general-intent offense).

¶ 27 Here, the calls were introduced as rebuttal evidence to the testimony of defendant's expert, Dr. Corvin, who opined on defendant's mental health diagnosis and capacity to form intent for the purposes of defendant's defense. As a matter of law, Dr. Corvin's testimony and the State's rebuttal evidence of the calls are

---

[9] The jury was not instructed on the defense of insanity, and defense counsel did not argue that defendant was legally insane.

irrelevant to the assault with a firearm on a government official conviction and resulting felony murder conviction. Therefore, we conclude that the trial court's error in denying the motion to continue for defense counsel to review the calls and consult with the experts was harmless beyond a reasonable doubt as to the conviction of felony murder based on the underlying felony of assault with a firearm on a government official conviction. We hold that defendant is entitled to a new trial only on the charge of robbery with a dangerous weapon.

## IV.  Conclusion

For the reasons set forth herein, we conclude that the Court of Appeals erred as the trial court committed constitutional error by denying the motion to continue. However, the error by the trial court was harmless beyond a reasonable doubt as a matter of law to the conviction of first-degree murder under the felony murder rule where the underlying felony was a general-intent crime. Therefore, we affirm in part and reverse in part the decision of the Court of Appeals and direct the trial court to vacate the judgment as to the robbery with a dangerous weapon conviction for a new trial.

AFFIRMED IN PART AND REVERSED IN PART.

Justice BERGER did not participate in the consideration or decision of this case.